United States District Court
Southern District of Texas
**ENTERED**
February 13, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | |
|---|---|
| ZAHIYA MBABA, | § |
| | § |
| Petitioner, | § |
| | § |
| VS. | § CIVIL ACTION NO. 5:26-CV-00070 |
| | § |
| ORLANDO PEREZ, *et al.*, | § |
| | § |
| Respondents. | § |

## MEMORANDUM AND ORDER

Before the Court is Petitioner Zahiya Mbaba's Emergency Application for a Temporary Restraining Order. (Dkt. 2.) Petitioner requests that the Court convert the temporary restraining order it issued on January 18, 2026, into a preliminary injunction restraining Respondents from (1) transferring Ms. Mbaba outside this judicial district or (2) removing her from the United States to any third country, unless and until the Government provides her with constitutionally adequate notice and a meaningful opportunity to challenge any proposed country of removal through removal proceedings that permit her to seek fear-based protections as to the identified country of removal. (*See* Dkt. 3 at 7–9; Dkt. 18 at 3, 23; Dkt. 20 at 2.)

Having considered the likelihood of Petitioner's success on the merits, her injuries, the balance of equities, and public interest, Petitioner's request to convert the existing TRO into a preliminary injunction, (Dkts. 2, 18, 20), is hereby **GRANTED**.

## Background

### A. Ms. Mbaba's Immigration Proceedings

Petitioner Zahiya Mbaba ("Ms. Mbaba" or "Petitioner") is a thirty-six-year-old native and citizen of Mauritania. (*See* Dkt. 1 at 6; Dkt. 3 at 3.) Ms. Mbaba entered the United States in

December 2024 after escaping the family who had enslaved her in generational chattel slavery and subjected her to daily sexual abuse, violence, and exploitation. (Dkt. 1 at 6; Dkt. 3 at 3; Dkt. 18 at 20.) Since her arrival in December 2024, Ms. Mbaba has been detained in immigration custody by Immigration and Customs Enforcement (ICE) at the Laredo Processing Center. (Dkt. 3 at 3.) After the Government placed Ms. Mbaba into removal proceedings under 8 U.S.C. § 1229a, she applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). (Dkt. 1 at 6.) Mbaba was granted withholding of removal as well as withholding and deferral of removal under the CAT by an Immigration Judge ("IJ") on July 28, 2025. (*Id.*; Dkt. 3 at 3.) That order designated Mauritania as the country of removal for Ms. Mbaba but simultaneously withheld Ms. Mbaba's removal as to Mauritania. (Dkt. 1 at 6; Dkt. 3 at 3.) In granting withholding of removal and CAT protections, the IJ found that it was more likely than not that Petitioner would be persecuted and tortured if she returned to Mauritania. (*See* Dkt. 1 at 6; Dkt. 3 at 3); *see also* 8 U.S.C. § 1231(b)(3); Note to § 1231 (United States Policy with Respect to Involuntary Return of Persons in Danger of Subjection to Torture); 8 C.F.R. §§ 208.16–18, 1208.16–18. Neither the Government nor the IJ ever identified another country to where Ms. Mbaba could be removed during her removal proceedings. (Dkt. 1 at 6; Dkt. 3 at 3.) Since being granted withholding of removal and CAT protections on July 28, 2025, Ms. Mbaba has remained detained in the Laredo Processing Center. (Dkt. 3 at 3.)

### B. Third Country Removals

Withholding of removal under the Immigration and Nationality Act (INA) is a form of immigration relief that requires the Government not to remove a noncitizen to a country where she has shown a sufficient likelihood of persecution, although it does not guarantee relief from removal to an alternative country. 8 U.S.C. § 1231(b)(2)(E); *see generally* 8 U.S.C. § 1231(b) (providing

the framework for designation). Similarly, protection under the CAT is a mandatory protection against deportation to a country where the IJ finds that the individual is likely to be tortured, but not protection against removal itself. *See* Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681–822 (1998) (codified as Note to 8 U.S.C. § 1231); 8 C.F.R. §§ 208.16–18, 1208.16–18; 28 C.F.R. § 200.1. However, relatively few noncitizens granted withholding of removal or CAT protections have successfully been removed to alternative countries historically. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 537 (2021) (addressing the contention that "DHS often does not remove an alien to an alternative country if withholding relief is granted" and "only 1.6% of aliens who were granted withholding of removal were actually removed to an alternative country").

The Department of Homeland Security's (DHS) policy has generally been to release noncitizens granted withholding of removal or CAT protection subject to conditions of supervision. *See* U.S. Dep't of Just., Detention and Release during the Removal Period of Aliens Granted Withholding or Deferral of Removal (Apr. 2, 2000), https://perma.cc/2UEC-HKMT. But in February of 2025, DHS issued a policy directive instructing the Enforcement and Removal Operations (ERO) division of ICE to review the cases of noncitizens granted withholding of removal or protection under the CAT "to determine the viability of removal to a third country and accordingly whether the alien should be re-detained." DHS, Policy Directive on Expedited Removal and Nondetained Docket (Feb. 18, 2025), https://perma.cc/T8TV-GT84; (Dkt. 1 at 7, Attach. 3.) [1]

---

[1] The Court will use "Attachment" to refer to sub-filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries.

In March of 2025, the Secretary of Homeland Security, Kristi Noem, issued a memorandum entitled "Guidance Regarding Third Country Removals" ("March Guidance"). (Dkt. 1, Attach. 4.) The March Guidance provides instructions to immigration agencies on how to initiate removal to a third country (a country not designated in the initial removal order) for individuals who have been granted withholding of removal and/or CAT protections and are subject to a removal order under sections "240, 241(a)(5), or 238(b) of the Immigration and Nationality Act." (*Id.*, Attach. 4 at 1.) The March Guidance provides that noncitizens may be removed to a third country that "has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured" and "[i]f the United States has received such assurances, and if the Department of State believes those assurances to be credible, the alien may be removed without the need for further procedures." (*Id.*, Attach. 4 at 1–2.)

The March Guidance goes on to say that if the United States has not received those assurances or does not believe them to be credible, DHS must start the third country removal process by informing the noncitizen of removal to the third country. (*Id.*, Attach. 4 at 2.) If the noncitizen affirmatively expresses a fear of removal to the third country to U.S. Citizenship and Immigration Services (USCIS), then the noncitizen will be referred for a screening by a USCIS officer for eligibility for protection under 8 U.S.C. § 1231(b)(3) and the CAT for the country of removal. (*Id.*) After this initial screening, if the USCIS officer does not believe that it is more likely than not that the noncitizen will be persecuted on a statutorily protected ground or tortured in the country of removal, the noncitizen will be removed. (*Id.*) If a USCIS officer determines that the individual does meet this standard, and the noncitizen was previously in proceedings in Immigration Court, ICE will be informed and may file a motion to reopen with the Immigration

Court or Board of Immigration Appeals (BIA), or "ICE may choose to designate another country for removal." (*Id.*)

On July 9, 2025, ICE issued a directive affirming that ICE employees should adhere to the March 30, 2025 Memorandum. (Dkt. 1 at 7, Attach. 5.) Additionally, Petitioner has submitted evidence that under these procedures, the Government has removed noncitizens to third countries, including El Salvador, Panama, Costa Rica, Honduras, Ghana, South Sudan, Eswatini, Uzbekistan, and Mexico. (*Id.* at 8, Attach. 6.) Moreover, Petitioner alleges that the third countries' diplomatic assurances to the Department of State have not prevented third countries from deporting noncitizens to the countries from which they were granted withholding of removal or CAT protection. (*See id.*) (providing evidence of several instances of chain-refoulment).

### C. DHS's Attempt to Remove Petitioner to Equatorial Guinea

From the date of the IJ's order granting relief until mid-January of 2026, Ms. Mbaba received no communications regarding her potential removal. (Dkt. 1 at 6). Then, on Saturday, January 17, 2026, an employee of CoreCivic, the private contractor that runs the Laredo Processing Center, mentioned to Ms. Mbaba that, as early as January 18, 2026, or January 19, 2026, Petitioner would be moved to a detention center in Louisiana in preparation for her removal to a third country on Tuesday, January 20, 2026. (Dkt. 3 at 3–4; Dkt. 1 at 6.) At that time, she did not receive any written notice or other information regarding pending removal from ICE or any other government official. (Dkt. 1 at 6.)

Petitioner filed an Emergency Complaint for Injunctive and Declaratory Relief and Petition for Writ of Mandamus (Dkt. 1), an Emergency Application for a Temporary Restraining Order (Dkt. 2), and a Memorandum of Law in Support of Emergency Application for a Temporary Restraining Order (Dkt. 3) on January 18, 2026, seeking immediate relief from the Court. (Dkts.

1, 2, 3.) Petitioner alleged that Federal Respondents ("Respondents" or "the Government") violated her right to due process because she received no notice of the proposed country of removal nor any opportunity to challenge her removal to that country. (Dkts. 1, 2, 3.) As such, Petitioner sought emergency relief to restrain Respondents from carrying out her imminent transfer and removal. Considering the urgency of the request, the Court granted an emergency temporary restraining order that same day and then ordered Respondents to respond to Petitioner's claims before the Court. (Dkts. 8, 12.)

Respondents submitted a timely response requesting that the Court dissolve the temporary restraining order and also moved to dismiss Petitioner's petition for writ of mandamus for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted. (Dkt. 17); *see* Fed. R. Civ. P. 12(b)(1), (b)(6). Respondents assert that, on or about January 16, 2026, Petitioner was approved for removal to a "safe third country," specifically Equatorial Guinea. (Dkt. 17 at 2–3.) Furthermore, on January 18, 2026, Petitioner's counsel requested information from ICE about Petitioner's potential removal to a third country after learning from Petitioner about a potential removal from a CoreCivic employee. (*Id.*, Attach. 1.) Petitioner's counsel also simultaneously requested a fear screening. (*Id.*, Attach. 1.) Later that same day, ICE notified Petitioner's counsel that "Ms. Mbaba is scheduled for transfer to the Alexandria Staging Facility in Alexandria, LA, on 1/19/2025 for staging in preparation for removal to a safe third country. ERO will provide notification of removal to a safe third country in accordance with current requirements." (*Id.*, Attach. 1.)

Respondents argue that the Court should dissolve the TRO for three primary reasons: (1) Petitioner's claims are not ripe for adjudication because prior to filing the petition and motions for injunctive relief, Petitioner was not served notice of the third country to which she will be removed

and thus has not claimed fear of removal to any particular third country, (2) the Court is stripped of jurisdiction to hear Petitioner's claim under 8 U.S.C. §§ 1252(a)(5), (b)(9), and (g) because this Petition challenges the decision of the Government to execute Petitioner's final order of removal, and (3) finally, even if the Court does have jurisdiction, Petitioner is owed limited due process as a noncitizen with a final order of removal, and neither the INA nor Due Process Clause give Petitioner a basis to challenge the Government's decision to execute her removal to a safe third country. (*See* Dkt. 17 at 2.)

Petitioner submitted a timely reply to the Respondents' motion and the Court took the motions under advisement. (*See* Dkt. 18.) The Court then sought additional clarification from the Petitioner on the scope of the preliminary injunction sought and extended the TRO until Sunday, February 15, 2026, in order to consider the supplemental filing and the parties' arguments. (Dkts. 19, 20.)

## Legal Standard

### A. Preliminary Injunction

A court may issue a preliminary injunction upon notice to the adverse party. Fed. R. Civ. P. 65(a). A preliminary injunction is a type of emergency relief, the purpose of which is to preserve the status quo. *Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971) (per curiam). To obtain a preliminary injunction or temporary restraining order, the plaintiff must establish the following four elements: "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the injunction will not disserve the public interest." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (quoting *Canal Auth. v.*

*Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)); *see also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). The third and fourth factors, harm to the opposing party and the public interest, "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

For preliminary injunctions, no one factor is necessarily given more weight than another, "[r]ather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023) (quoting *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975)). However, "[t]he purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Texas v. United States*, 328 F. Supp. 3d 662, 709 (S.D. Tex. 2018) (citing *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974)). "Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579 (2017) (citing *Winter*, 555 U.S. at 20, 24).

## Discussion

### A. Jurisdiction

Federal courts are duty-bound to examine their own subject-matter jurisdiction and may not proceed where it is apparent that jurisdiction does not exist. *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004). "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007); *see also Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). This Court has subject matter jurisdiction over Petitioner's claims under the Suspension Clause; the Fifth Amendment; the Mandamus Act; federal question jurisdiction; the All Writs Act; and the

Declaratory Judgment Act. *See* U.S. Const. art. I, § 9, cl. 2; U.S. Const. amend. V; 28 U.S.C. §§ 1361, 1331, 1651, 2201–2202.

Respondents argue that the Court is stripped of jurisdiction to hear Petitioner's claim under 8 U.S.C. §§ 1252(a)(5), (b)(9), and (g) because Petitioner's claims are intertwined with ICE's unreviewable authority to execute a final order of removal and that Petitioner's claims are not ripe for review. (Dkt. 17 at 3–5.)

### 1.  *8 U.S.C. § 1252*

The Court is not persuaded that § 1252 restricts review of Ms. Mbaba's request for a preliminary injunction. Section 1252(g) bars review of the discretionary decision of the agency to execute a removal order against a noncitizen. *See* 8 U.S.C. § 1252(g) ("Except as provided in this section and notwithstanding any other provision of law . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to . . . execute remove orders against any alien under this [Act]."). The Fifth Circuit "has long recognized that [§ 1252(g)] is designed to protect the discretionary decisions of immigration authorities in matters related to removal and deportation." *Duarte v. Mayorkas*, 27 F.4th 1044, 1055 (5th Cir. 2022) (citing *Alvidres-Reyes v. Reno*, 180 F.3d 199, 201 (5th Cir. 1999)). The distinction between claims that are linked to a removal order and those that are not depends on the relief that a petitioner seeks. *See Duarte*, 27 F.4th at 1055. "[D]istrict courts . . . have distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not." *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 152 (W.D.N.Y. May 2, 2025) (citing *Torres-Jurado v. Biden*, 2023 WL 7130898, at *2 (S.D.N.Y. Oct. 29, 2023) (collecting cases)).

Here, as the Court has already recognized, the Petitioner does not seek review of the discretionary decision to execute her removal order. (*See* Dkt. 1 at 2–4.) Rather, she seeks review of the process due to her under the Fifth Amendment's Due Process Clause after that decision has been made. (*Id.*). As a result, the Court's jurisdiction is not barred by section 1252(g). *See also Sagastizado v. Noem,* 802 F. Supp. 3d 992, 1005 (S.D. Tex. 2025) (finding jurisdiction for review of third country removal procedures).

Additionally, sections 1252(a)(5) and (b)(9) also fail to strip the Court of jurisdiction. These sections limit review of final orders of removal to the U.S. Courts of Appeals. 8 U.S.C. § 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal . . . under any provision of this chapter."); 8 U.S.C. § 1252(b)(9) ("Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken . . . to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section."). First, Petitioner does not challenge any aspect of her underlying order of removal, so § 1252(a)(5) cannot bar review. Moreover, the Supreme Court has indicated that where a Petitioner is not "asking for review of an order of removal," "challenging the decision to detain them in the first place or to seek removal," or "challenging any part of the process by which their removability will be determined," § 1252(b)(9) is not a jurisdictional bar. *Nielsen v. Preap*, 586 U.S. 392, 402 (2019); *see also Duarte*, 27 F.4th at 1056–57; *see also Texas v. United States*, 809 F.3d 134, 163 (5th Cir. 2015). The Court applies the same reasoning here in finding that § 1252(b)(9) does not bar jurisdiction. Therefore, nothing in § 1252 strips the Court of its power to review Ms. Maba's constitutional claims that she is entitled to adequate notice and a meaningful opportunity to raise a fear claim before she is removed to a third country.

 *2. Ripeness*

Respondents argue that the case should be dismissed because it is not ripe for adjudication. (Dkt. 17 at 3.) The ripeness doctrine rests upon Article III's limitation of federal judicial authority to "Cases" and "Controversies." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014). Often, whether a party has standing—as by an actual or imminent injury in fact—and whether the party's claim is ripe for review are "the same question*." Id.* (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007)). In the Fifth Circuit, "[r]ipeness has both constitutional and prudential dimensions." *Umphress v. Hall*, 133 F.4th 455, 467 (5th Cir. 2025). Constitutional ripeness "boil[s] down to the same question" as Article III standing, while "[p]rudential ripeness considers the fitness of the issues for judicial review." *Id.* at 468 (citation omitted). Respondents assert that "Petitioner has rushed to file the instant Petition and motions without first receiving notice of her planned removal to Equatorial Guinea." (Dkt. 17 at 3.) The Court disagrees.

Respondents appear to argue both that Ms. Mbaba has failed to satisfy the requirement for Article III standing by demonstrating that she will suffer an injury in fact that is concrete, particularized, and actual or imminent, and that the Court should decline to address her claims for prudential reasons. (*Id.*) A claim for future injury confers Article III standing when the injury is "certainly impending or there is a substantial risk that the harm will occur." *Umphress*, 133 F.4th at 463 (citations omitted). Ms. Mbaba's threatened removal is not speculative or contingent on future events, rather it was imminent at the time of Petitioner's initial filing and continues to be imminent. Respondents assert that they are ready and prepared to remove Petitioner to Equatorial Guinea absent an injunction from the Court prohibiting them from doing so. (Dkt. 17.) Additionally, hasty removal to an alternative undisclosed third country remains a real possibility,

11 / 27

as the Government has already shown its willingness to carry out a fast-tracked deportation that leaves Petitioner and the Court with only a narrow opportunity to review its lawfulness. On the day of her filing, the evidence indicated that the Government sought to put Petitioner on a plane the same day or the following day (a federal holiday) and remove her to an undisclosed third country. This prompted the Petitioner to request relief from the Court on a Sunday afternoon and the Court to issue the TRO within hours of Petitioner's request due to the clear urgency of the matter.

Respondent's point to an email in which ICE—only after being contacted on an emergency basis by Petitioner's counsel—notified counsel for Petitioner for the first time that "Ms. Mbaba is scheduled for transfer to the Alexandria Staging Facility in Alexandria, LA, on 1/19/2025 for staging in preparation for removal to a safe third country. ERO will provide notification of removal to a safe third country in accordance with current requirements." (*Id.*, Attach. 1.) But what this notification would have entailed or when it would have occurred remains unknown.[2] Thus, on both Article III standing and on prudential grounds the Court finds that this dispute is ripe for review. Therefore, the Court concludes that it has jurisdiction over Petitioner's claims and will proceed to analyze the merits of granting the preliminary injunction.[3]

---

[2] According to Petitioner, it was only after the TRO was issued that she learned that the Government intends to remove her to Equatorial Guinea due to Respondents' admission to the Court in their Response and Motion to Dismiss, (Dkt. 17), acknowledging that Equatorial Guinea is the "safe third country" it has identified. (*See* Dkts. 18, 20). There is no reason to believe that the Government will not select another country for removal in the future and the March Guidance contemplates rapid decision-making, potentially before Petitioner has opportunity to seek relief from the Court.

[3] Respondents do not raise arguments as to the effect of the class-wide certification and Supreme Court stay in *D.V.D. v. DHS*, 778 F. Supp. 3d 355 (D. Mass.), *stay granted*, 145 S. Ct. 2153 (2025). At any rate, the Court has addressed this issue in depth and found that *D.V.D.* does not preclude judicial review of individual claims. *Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1006–08 (S.D. Tex. 2025).

**B. Preliminary Injunction Factors**

Upon review of Petitioner's claims for the preliminary injunction, the Court finds that all four factors weigh in favor of granting injunctive relief. *Winter*, 555 U.S. at 20 (Petitioner must establish "that [she] is likely to succeed on the merits, that [she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest.")

*1. Substantial Likelihood of Success on the Merits*

Petitioner has shown a high likelihood of success on her due process claim that deportation without adequate notice of the proposed third country of removal and an opportunity to reopen her removal proceedings to seek fear-based protections before an IJ violates her rights under the Fifth Amendment. (Dkt. 3 at 7–9.) First, Ms. Mbaba's claim presents substantial similarities to the claims before the Court in *Sagastizado v. Noem*, 802 F. Supp. 3d 992 (S.D. Tex. 2025) in which the Court held that removal to a third country without—at a minimum—review of the petitioner's denied reasonable fear interview ("RFI") by an IJ violated his right to due process. (*Id.* at 1008– 13.) Here, Ms. Mbaba submits that due process requirements cannot be satisfied in her case unless she is provided with adequate notice of any third country of removal and the opportunity to reopen her removal proceedings and seek fear-based protections directly before an IJ. (Dkt. 3 at 7–9; Dkt. 18 at 6–17.) The Court now considers what due process requires and concludes that Ms. Mbaba is entitled to the safeguards she seeks.

  a. Removal to a Third Country Without Notice and the Reopening of Ms. Mbaba's Removal Proceedings Would Violate Due Process

 The Court emphasizes that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citations omitted). It requires "at a

minimum . . . that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). That noncitizens are entitled "to due process of law in the context of removal proceedings" is "well established." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993); *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *Torres v. Garland*, 2023 WL 3300969, at *3 (5th Cir. May 8, 2023) (per curiam) (unpublished)).

The central question before the Court is whether due process requires that Ms. Mbaba be given adequate notice and an opportunity to reopen her removal proceedings or merely the procedures available under the March Guidance. Currently, Ms. Mbaba seeks the opportunity to raise a fear-based claim to Equatorial Guinea, a country to which Respondents now imminently intend to remove her absent injunctive relief. (*See* Dkt. 17.) She argues that she is entitled to have her removal proceedings reopened so that she can present her fear-claim directly to an IJ at an evidentiary hearing before Respondents remove her. (Dkt. 18 at 13–17.) Additionally, she argues that the Government is likewise required to provide her sufficient notice and the opportunity to reopen her removal proceedings if the Government identifies any other third country of removal in the future. (*Id.*)

Under the INA, Respondents may seek to remove a noncitizen granted withholding of removal or CAT protections from one country to another country that will accept the noncitizen by following a statutorily prescribed process for selecting an alternative country of removal. *See* 8 U.S.C. § 1231(b)(2)(E)(i)–(vii); *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005); *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 530–32 (2d Cir. 2006); *Himri v. Ashcroft*, 378 F.3d 932, 938–40 (9th Cir. 2004); *Palavra v. I.N.S.*, 287 F.3d 690, 692 (8th Cir.

2002). But the INA also prohibits removal to a country where a noncitizen's life or freedom would be threatened on account of a protected characteristic or where a noncitizen would be tortured. *See* 8 U.S.C. § 1231(b)(3); Note to 8 U.S.C. § 1231 (United States Policy with Respect to Involuntary Return of Persons in Danger of Subjection to Torture). Withholding of removal and CAT are thus mandatory protections for noncitizens who demonstrate that they meet the criteria rather than a discretionary grant. *See I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 419–20 (1999). Eligibility is determined on an individual basis to "strike a . . . balance between securing the removal of inadmissible aliens and ensuring their humane treatment." *Jama*, 543 U.S. at 348.

Given the mandatory nature of withholding of removal and CAT protections, courts considering due process in this context have agreed that a "noncitizen must be given sufficient notice of a country of deportation that, given [her] capacities and circumstances, [she] would have a reasonable opportunity to raise and pursue [her] claim for withholding of deportation." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976) and *Kossov v. I.N.S.*, 132 F.3d 405, 408 (7th Cir. 1998)); *see also Guzman Chavez v. Hott*, 940 F.3d 867, 879 (4th Cir. 2019), *rev'd on other grounds*, 594 U.S. 523 (2021); *Protsenko v. U.S. Att'y Gen.*, 149 F. App'x 947, 953 (11th Cir. 2005) (per curiam); *Nguyen v. Scott,* 796 F. Supp. 3d 703, 728–29 (W.D. Wash. 2025) ("Petitioner is likely to succeed on his claim that removal to a third country under ICE's current policy, without meaningful notice and reopening of his removal proceedings for a hearing, would violate due process."); *Sagastizado*, 802 F. Supp. 3d at 1009; *Y.T.D. v. Andrews*, 2025 WL 2675760, at *11 (E.D. Cal. Sept. 18, 2025). Therefore, while the Court acknowledges that the Executive has the authority to determine the procedures to implement its policy of third country removals, those procedures must nevertheless provide sufficient procedural protections to ensure that the noncitizen's removal does not violate the

prohibition on removing them to countries where they would be tortured or persecuted.[4] *See Galvan v. Press*, 347 U.S. 522, 531 (1954).

Respondents argue they have provided a process under the March Guidance that satisfies these obligations. Specifically, they argue that Petitioner is afforded no more due process to challenge her removal to a third country than what is explicitly provided by the Executive under the March Guidance because a determination by the Executive that a country will not torture a person is conclusive. (Dkt. 17 at 6) (citing *Munaf v. Geren*, 553 U.S. 674, 702–03 (2008)).

Respondents' argument that Ms. Mbaba may be removed to a third country with no more due process than what the Executive gives her under the March Guidance is unpersuasive. "Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895, (1961) (citation omitted). It "calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Because there is no process under the INA for a noncitizen to raise a fear-based claim in the context of third county removals, the Court

---

[4] It is worth briefly noting that courts contemplating the possibility of future removal to a third country prior to the implementation of the Government's third country removal policy appeared to assume that a noncitizen granted withholding of removal would be entitled as a matter of due process to an additional opportunity to seek withholding of removal before an IJ as to the new proposed country. *See, e.g.*, *Su Hwa She v. Holder*, 629 F.3d 958, 965 (9th Cir. 2010), *superseded by statute on other grounds as stated in Ming Dai v. Sessions*, 884 F.3d 858, 867 n.8 (9th Cir. 2018) ("Under the plain wording of 8 C.F.R. § 1208.16, an applicant is not entitled to adjudication of an application for withholding of removal to a country that nobody is trying to send them to. Here, the proposed country of removal is Taiwan, not Burma, despite the IJ's designation of both nations. To be sure, an eligible petitioner may apply for asylum and withholding of removal to countries designated by an IJ pursuant to 8 C.F.R. § 1240.10(f). *See* 8 C.F.R. § 1240.11(c) (2010). It follows that a failure to provide notice and, upon request, stay removal or reopen the case for adjudication of She's applications as to Burma would constitute a due process violation *if* Burma becomes the proposed country of removal (as opposed to an alternative country of removal), but not otherwise."); *see also Sadychov v. Holder*, 565 F. App'x 648, 651 (9th Cir. 2014) (relying on *Su Hwa She*).

16 / 27

must look to the INA and its regulations to provide "substantive guidance" on the due process Ms. Mbaba should receive to ensure she is not "removed to a country where [her] life or freedom would be threatened." *See* 8 U.S.C. § 1231(b)(3)(A); *Sagastizado*, 802 F. Supp. 3d at 1009.

Under the INA, a noncitizen is provided the opportunity to raise a fear-based claim to an IJ through the removal proceedings process. *See* 8 U.S.C. § 1229a (describing the process). This process allows for an evidentiary hearing in which the noncitizen may present objective evidence of torture or persecution in the designated country of removal in addition to their own testimony pertaining to prior instances of torture or persecution. *Id.* The INA establishes that because withholding and CAT protections are mandatory, even noncitizens who are ineligible to seek other forms of immigration relief because of their manner of entry or because of a final order of removal are still eligible to seek fear-based protections and have their claims heard before an IJ at an evidentiary hearing. *See* 8 U.S.C. § 1231(b)(3); *Nasrallah v. Barr*, 590 U.S. 573, 581 (2020); *Guzman Chavez*, 594 U.S. at 540–41; *see also* 8 CFR §§ 208.18, 30–31, 1208.18, 30–31 (providing noncitizens with the opportunity to seek CAT protection even when a noncitizen has already been ordered removed or is subject to expedited removal provisions).

On the other hand, as described above, the March Guidance envisions two abridged ways of removing a noncitizen to a third country. (*See* Dkt. 1, Attach. 4.) First, for countries from which the State Department has received "diplomatic assurances that [noncitizen]s removed from the United States will not be persecuted or tortured," removal can take place without *any* additional process. (*Id.*) Second, for countries where the State Department has not received such assurances, the burden is on the noncitizen to state a fear of torture or persecution in order to trigger any additional protections. (*Id.*) If the noncitizen is able to state such a fear to the satisfaction of the relevant immigration officials, then she will receive an expedited screening interview before

USCIS but will not be provided with an opportunity to request review of that screening before an IJ as she would in other USCIS fear-screening processes. *See Sagastizado,* 802 F. Supp. 3d at 1010 (looking to the federal regulations for guidance and noting that "there are no regulations that provide for a circumstance under which USCIS is given the authority to conduct fear-screening interviews without providing for independent review of that screening by an IJ").

Neither process is sufficient under the Constitution as both fail to provide a meaningful opportunity to raise a fear claim. First, deportation without any individualized assessment of the risk of torture and persecution cannot comport with due process despite the Government's contention otherwise. *See Esmail v. Noem*, 2025 WL 3030589, at *7 (C.D. Cal. Sept. 26, 2025) (citing *Nguyen*, 796 F. Supp. at 727) ("[r]eliance on such blanket assurances as a substitution for notice and the opportunity to be heard cannot comport with basic due process"). Due process requires the Government to answer whether Ms. Mbaba specifically faces possible torture or persecution in Equatorial Guinea, including whether removal to Equatorial Guinea would result in "chain refoulement" to her home country of Mauritania. The INA confirms this, as both withholding of removal and CAT require an individualized assessment of the specific risk that a noncitizen faces if removed. *See* 8 U.S.C. § 1231(b)(3)(A), Note to § 1231 (United States Policy with Respect to Involuntary Return of Persons in Danger of Subjection to Torture). Thus, reliance on blanket assurances is no substitute for an individualized determination through a proceeding that is appropriately calibrated to provide notice and an opportunity to be heard.

Second, the opportunity for a subjective fear screening before USCIS is also inadequate because it fails to provide for the opportunity to have an evidentiary hearing. As Petitioner argues, "the rights granted by the INA and the [CAT] are weighty and cannot be taken away without some form of adjudicative process incorporating an evidentiary hearing." (Dkt. 18 at 9–10.) She argues

18 / 27

that a USCIS screening based on her subjective fear of removal to Equatorial Guinea does not allow her the opportunity to present objective evidence of the risk of persecution or torture in Equatorial Guinea or the risk of chain refoulement to Mauritania. (*Id.*).

Under a *Mathews v. Eldridge* analysis, the Court agrees that Ms. Mbaba is entitled to the process that she seeks. As the Court set out in *Sagastizado v. Noem*, the risk of erroneous deprivation of Petitioner's rights when provided with only a USCIS fear-screening is high and a *Mathews* balancing test weighs in favor of requiring additional procedural safeguards. *Sagastizado*, 802 F. Supp. 3d at 1011–13 (evaluating Petitioner's interests and the procedures due to Petitioner under *Mathews* to find that the March Guidance is insufficient). Both withholding of removal and CAT protections require consideration of objective evidence. *I.N.S. v. Cardoza-Fonseca,* 480 U.S. 421, 430–31 (1987) (holding that there is "no subjective component" to withholding of removal; rather, the noncitizen must "establish by objective evidence that it is more likely than not that he or she will be subject to persecution upon deportation"); *Garcia v. Wilkinson*, 988 F.3d 1136, 1148 (9th Cir. 2021) ("Protection under CAT is based entirely on an objective basis of fear; there is no subjective component to an applicant's fear of torture." (citations omitted)). Thus, considering Petitioner's weighty interests under a *Mathews* analysis in not being removed to a country where she will face persecution or torture, the Court agrees that an evidentiary hearing in which a neutral adjudicator can consider both objective evidence of the risk of future persecution and torture in addition to a petitioner's subjective fear is required. *See Nguyen,* 796 F. Supp. 3d at 728–29; *accord Santosky v. Kramer*, 455 U.S. 745, 769–70 (1982) (requiring full evidentiary hearing governed by a "clear and convincing evidence" standard prior to the termination of parental rights); *Vitek v. Jones*, 445 U.S. 480, 496–97 (1980) (requiring adversary hearing prior to transferring inmate to a mental hospital*); Addington v. Texas,* 441 U.S.

418, 432–33 (1979) (requiring full evidentiary hearing governed by a standard higher than "preponderance of the evidence" prior to civil commitment).

As outlined above, the INA already provides for such a process, namely removal proceeding before an IJ in which Petitioner may seek withholding of removal and/or CAT protections. Requiring the Government to follow this process for determining removability that is already in place for third country removals would be minimally burdensome. *See Dusenbery v. United States,* 534 U.S. 161, 167 (2002) (citing *Mathews*, 424 U.S. at 335) (determining the specific dictates of due process generally requires evaluation of "(1) the private interest that will be affected by the official action, (2) a cost-benefit analysis of the risks of an erroneous deprivation versus the probable value of additional safeguards, and (3) the Government's interest, including the function involved and any fiscal and administrative burdens associated with using different procedural safeguards.") Therefore, the Court is persuaded that under the *Mathew's* standard, reopening Ms. Mbaba's removal proceedings is required.

The Court briefly addresses Respondents remaining arguments. Respondents also argue, in the alternative, that due process has been satisfied because "Petitioner was offered an opportunity to express [sic] her fear of returning to Equatorial Guinea, or any other country, while she was in removal proceedings" and that "[a]n alien knows which specific third country she fears removal to and therefore does not need to await any DHS designation before seeking protection." (Dkt. 17 at 6.) Finally, Respondents argue that the proper remedy for Ms. Mbaba if she fears removal to Equatorial Guinea or any other country is to file a discretionary motion to reopen her original removal proceedings before an IJ with the Executive Office of Immigration Review ("EOIR"). (*Id.*)

To the extent that Respondents suggest that Ms. Mbaba should have foreseen her removal to any number of countries around the world, investigated the circumstances of every single one of those countries to determine if she feared removal, and then submitted evidence during her initial removal proceedings of all potential harm she could face if the Government were to decide to remove her to those countries, the Court rejects this argument as patently unreasonable and impracticable. Finally, while reopening removal proceedings is the correct procedural vehicle for vindicating Ms. Mbaba's constitutional rights and allowing her to assert a fear-based claim before an IJ, due process requires assurance that reopened proceedings will in fact take place. The discretionary nature of a motion to reopen before EOIR is therefore inadequate to protect Ms. Mbaba's rights. Thus, the Court agrees that Ms. Mbaba is entitled under due process to adequate notice of any proposed third countries of removal and a meaningful opportunity to raise a fear-based claim through reopening her removal proceeding before an IJ.

    b. <u>The Court May Address Ms. Mbaba's Claims Through a Petition for a Writ of Mandamus</u>

Based on the Court's determination of Petitioner's constitutional rights, the Court agrees the Mandamus Act permits this Court to mandate that the Government provide Ms. Mbaba notice and opportunity to be heard prior to any removal. Such relief is appropriate where "(i) the plaintiff has a clear right to relief, (ii) the defendant has a clear duty to act, and (iii) no other adequate remedy exists." *Ahmed v. Bitter*, 727 F. Supp. 3d 630, 637 (S.D. Tex. 2024); *accord Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380–81(2004); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc). The petitioner's right to relief may be "set out in the Constitution or by statute." *Offiong v. Holder*, 864 F. Supp. 2d 611, 627 (S.D. Tex. 2012).

Here, as set out above, the Due Process Clause and the INA provide Ms. Mbaba with a right to adequate notice and opportunity to be heard by reopening her removal proceedings to allow

21 / 27

her to seek fear-based relief before an IJ as to a third country of removal. Moreover, "[t]he Fifth Amendment prescribes a specific course of action for government entities and personnel—do not deprive any person of life, liberty, or property without due process of law." *C.M. v. United States*, 672 F. Supp. 3d 288, 351 (W.D. Tex. 2023); *see also Owen v. City of Independence*, 445 U.S. 622, 649 (1980) (explaining that governmental entities have "no 'discretion' to violate the Federal Constitution; its dictates are absolute and imperative"). That duty is owed to Ms. Mbaba as a noncitizen involved in removal proceedings. *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025). Finally, there is no other remedy that could provide Ms. Mbaba with adequate relief. Although Respondents suggest that she could file a motion to reopen her removal proceedings, the IJ would have discretion to deny the motion to reopen despite her fear of removal to a third country. Therefore, the Court holds that Ms. Mbaba is likely to succeed on the merits of her claim for the purposes of issuing preliminary injunctive relief.

### 2. *Irreparable Harm*

Respondents do not directly challenge the issuance of the preliminary injunction on the irreparable harm factor. (Dkt. 17.) Nevertheless, the Court addresses its likelihood and finds that Petitioner has more than shown that "irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22.

In general, "the loss of constitutional freedoms . . . 'unquestionably constitutes irreparable injury.'" *BST Holdings, L.L.C. v. Occupational Safety & Health Admin.,* 17 F.4th 604, 618 (5th Cir. 2021) (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976)) (holding that any violation of constitutional rights, "for even minimal periods of time" constitutes irreparable harm). In the removal context specifically, while "the burden of removal alone cannot constitute the requisite irreparable injury," courts have agreed that removal to a country in which an individual faces

22 / 27

persecution or torture constitutes irreparable harm. *See Nken,* 556 U.S. at 435; *Nunez v. Boldin*, 537 F. Supp. 578, 587 (S.D. Tex. 1982) ("Deportation to a country where one's life would be threatened obviously would result in irreparable injury"), *appeal dismissed without op.*, 692 F.2d 755 (5th Cir. 1982); *see also Sagastizado,* 802 F. Supp. 3d at 1014 (finding a "substantial risk of irreparable harm" where the petitioner would be removed to a country in which they had no legal status); *Mahdejian v. Bradford*, 2025 WL 2269796, at \*4–5 (E.D. Tex. July 3, 2025) ("Here, the threatened harm is clear and simple: persecution, torture, and death."); *Misirbekov v. Venegas*, 2025 WL 2201470, at \*2 (S.D. Tex. Aug. 1, 2025) (finding irreparable harm where petitioner had not been given due process and faced potential refoulement because of removal to a third country after being granted withholding of removal); *Tesfamichael v. Gonzales*, 411 F.3d 169, 178 (5th Cir. 2005) (finding that petitioners demonstrated likelihood of irreparable harm, in part because of potential persecution if they were deported).

Ms. Mbaba argues that due to the lack of safeguards afforded under the March Guidance, she faces the irreparable harm of removal to a country that could return her to Mauritania, a country where an IJ has already found she, more likely than not, will be persecuted or tortured. (Dkt. 18 at 18.) Specifically, she asserts that the risk of chain-refoulement following her removal to a third country is particularly high given that the Respondents have identified Equatorial Guinea as the allegedly "safe country" to which Ms. Mbaba is to be removed. (*Id.* at 19.) Equatorial Guinea has reportedly refouled *eight out of the nine* third-country removees it has received under the new third country removal policy. (*Id.*) (citing Sherriff Bojang Jnr, *Equatorial Guinea Sends Eight of Trump's Nine Deportees Home, Braces of New Arrivals*, THE AFRICA REPORT (Jan. 16, 2026, 12:00 PM), https://perma.cc/9XAT-WRQV.) Thus, there is very good reason to believe that

Equatorial Guinea will likewise immediately send Ms. Mbaba back to Mauritania and to the hereditary chattel slavery that she escaped from.

And even if Ms. Mbaba were to be removed to a different third country, the risk of refoulment to Mauritania remains high. (Dkt. 3 at 12–13.) Petitioner presents evidence that several other countries that have received third country deportees have also refouled them despite a determination by an IJ that they would face persecution or torture in their home countries. (*See* Dkt. 18 at 20) (collecting sources). Moreover, Ms. Mbaba is at particular risk of refoulment through the extradition processes because, as a member of the Haratin tribe, she was born into hereditary chattel slavery and the family that enslaved her has obtained a warrant for her arrest in Mauritania, making her extradition from a third country even more likely. (*Id.* at 20–21.) Finally, the Court also considers that Ms. Mbaba, because of her past experiences of torture and persecution in the form of exploitation and chattel slavery, is uniquely vulnerable to future forms of torture, exploitation, and abuse in a third country because of her lack of connections, past victimization, and language and cultural barriers. Thus, Ms. Mbaba has established that her removal would very likely result in irreparable injury, weighing heavily in favor of the Court granting the preliminary injunction.

### 3. Balance of Equities & Public Interest

Respondents also do not challenge the issuance of the preliminary injunction on either of the final third and fourth factors. As the Court already determined, the balance of equities and the public interest favor Petitioner. Here, since the government is the non-movant, the third and fourth elements fuse. *Nken*, 556 U.S. at 435. As the Court has already explained, Ms. Mbaba's entitlement to fair removal procedures in the face of possible persecution far outweighs any burden on the Government. *See Nunez*, 537 F. Supp. at 587 (stating that protecting people who face persecution

24 / 27

goes "to the very heart of the principles and moral precepts upon which this country and its constitution were founded"). Where the government fails to uphold statutory and constitutional rights, it can make no comparable claim to harm from an injunction. *State v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021) (per curiam) (stating that there is "generally no public interest in the perpetuation of unlawful agency action"); *see also Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022) (quoting *State*, 10 F.4th at 560); *see also Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451, 458 (5th Cir. 2016) (noting that the protection of constitutional rights is ordinarily of the highest public interest).

As addressed above, the relief Petitioner requests is merely for the Government to follow the existing process in place for noncitizens such as Ms. Mbaba who seek protection from potentially life-threatening removal through the reopening of her removal proceedings before an IJ. (*See* Dkt. 18 at 22.) Consequently, any potential harm to the expediency of her lawful removal is minimal. In contrast, Ms. Mbaba faces harm to her procedural due process rights; removal to a country where she could be tortured or persecuted; and potential refoulement to a country where an IJ has already determined that it is more likely than not that she would face persecution and torture. The Court has found that Petitioner is substantially likely to succeed on her claim that removal without adequate notice and a meaningful opportunity to raise a fear-based claim through reopening her removal proceedings violates her procedural due process rights under the Fifth Amendment. Therefore, granting preliminary injunctive relief to restrain Respondents from removing Petitioner prior to an opportunity to reopen removal proceedings is in the public interest.

### C. Bond

The Court maintains the terms of the current TRO and exercises its discretion to waive the requirement to post a bond under Rule 65(c) for the preliminary injunction. Before an injunction

may issue, a movant for preliminary relief must "give[ ] security" to redress the costs of a wrongful injunction. Fed. R. Civ. P. 65(c). But the movant need only post "an amount that the [district] court considers proper." *Id.* That last provision vests vast discretion in the trial court; indeed, a district court "may elect to require no security at all." *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 303 (5th Cir. 1978) (per curiam) (citations omitted); *see also Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (reaffirming *Corrigan Dispatch*). Courts frequently waive the bond requirement where, as here, the plaintiff is indigent and where the suit is brought to enforce constitutional rights. *E.g.*, *ODonnell v. Harris Cnty.*, 251 F. Supp. 3d 1052, 1160 (S.D. Tex. 2017).

## Conclusion

The Court has considered the merits of Petitioner's request for a preliminary injunction (Dkts. 1, 2, 3, 18, 20.) For the foregoing reasons, Petitioner's request to convert the existing TRO into a preliminary injunction, (Dkts. 2, 18, 20), is hereby **GRANTED**.

Respondents and all of their officers, agents, servants, employees, attorneys, successors, assigns, and persons acting in concert or participation with them are hereby **ENJOINED AND RESTRAINED** from:

(1) transferring Petitioner outside this judicial district, or

(2) removing Petitioner from the United States to any third country,

**Unless and until**:

(a) the Government provides Petitioner with at least (10) days' notice of the proposed country of removal, and

(b) the Government provides Petitioner with an opportunity to re-open her removal proceeding to permit her to seek fear-based protections as to the identified country(ies) of removal.

IT IS SO ORDERED.

SIGNED this February 13, 2026.

_____
Diana Saldaña
United States District Judge